**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OYSTER OPTICS, LLC<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC.,<br><br>　　　　　Defendant. | Case No. 2:18-cv-479-JRG |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTIONS IN LIMINE**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

I. INTRODUCTION

Pursuant to the Court's Docket Scheduling Order (Dkt. 2), Defendant Cisco Systems, Inc. refiles its motions in limine 3, 5, 7, and 9 from the consolidated action, No. 2:16-cv-1302-JRG, and asks the Court to exclude the following evidence and arguments.

  A. **Motion in Limine No. 3: The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, *inter partes* review (IPR) proceedings, including any decisions to institute or not institute review and final written decisions. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements "made to the Patent Office," without identifying the existence of IPR proceedings.**

Cisco and other parties filed Petitions for *Inter Partes* Review of Oyster's various patents, including on the remaining asserted patent, the '327 Patent. Some of those Petitions were instituted, and some were not; and some claims were invalidated and some were not. In accordance with this Court's past practice, Cisco moves to preclude any party from mentioning the existence, institution outcome, or final written decision outcome of any Petition; however, Cisco understands that statements made by the parties themselves may be used to the extent admissible. *See Huawei Techs. Co. v. T-Mobile US, Inc.*, Case No. 2:16-cv-00052-JRG-RSP (E.D. Tex. Sept. 29, 2017), Dkt. No. 440 Order on Motions *in Limine* at 2-3 ("The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, inter partes review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements 'made to the Patent Office,' without identifying the existence of IPR proceedings."). In the event that a party's statement to the PTAB is admissible, Cisco

requests that the parties be limited to referring to such statements as statements "made to the Patent Office" without identifying the existence of the IPRs. *Id. See also Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 10638138, at *4 (E.D. Tex. Apr. 26, 2018).

> **B.     Motion in Limine No. 5:  Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the '327 Patent contains disclosures or written description otherwise present only in other patents.**

Oyster should be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the '327 Patent contains disclosures present only in other, unasserted (or withdrawn) patents in its patent portfolio. For example, Cisco expects Oyster to rely on testimony from its invalidity expert, Dr. Lebby, and the inventor, Peter "Rocky" Snawerdt regarding the teaching of phase modulation in other patents to argue that the '327 Patent adequately discloses how to do phase modulation. Specifically, Dr. Lebby testified that the

███████████████████████████████████████████████████████████

███████████████████████ (Ex. 1 - Lebby Dep. 153:22-156:15), and similarly, Mr. Snawerdt

testified that ███████████████████████████████████████████

███████████████████████████." (Ex. 2 - Snawerdt Dep. 129:15-130:9).

Cisco believes that Oyster will try to use this testimony to rebut Cisco's written description and enablement defenses, as well as to argue in support of its broad theory of the benefits of the '327 Patent as it relates to damages. However, Oyster should not be permitted to argue that the '327 Patent satisfies the written description or enablement requirements by pointing to disclosures from different patents; the '327 patent specification itself must disclose sufficient information to describe to, enable, or teach persons of ordinary skill. 35 U.S.C. § 112; *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682-85 (Fed. Cir. 2015); *AbbVie*

*Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298-99 (Fed. Cir. 2014). Thus, under FRE 402 and 403, Oyster should be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that any the '327 Patent contains disclosures present only in other, unasserted patents within Oyster's portfolio (including those patents previously asserted and since withdrawn).

> C. **Motion in Limine No. 7: Oyster may not raise any argument, evidence, testimony, insinuation, reference, or assertion regarding the licenses to the '500 Patent with ▮▮▮▮▮▮▮▮▮, including that such licenses are comparable to a license that Cisco would have entered into with respect to the '327 Patent.**

The parties have agreed that this motion *in limine* should be heard with Cisco's Motion to Exclude the Opinions and Testimony of Oyster's Damages Expert, Stephen Dell, Under Fed. R. Evid. 702 and *Daubert* (No. 2:16-cv-1302, Dkt. 249), which has been refiled in the above-captioned case. As set forth more fully in Cisco's Motion, Dell relies almost exclusively on two non-comparable, ▮▮▮▮▮▮ license agreements to U.S. Patent No. 6,665,500 (the "'500 Patent") as the foundation for his opinion that Cisco and Oyster would have agreed to a ▮ ▮▮▮▮. But, the '500 Patent has never been asserted against Cisco, and has no familial relationship to any of the patents ever asserted here.[1]

"This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *ResQNet.com*, 594 F.3d at 869 (citing *Lucent,* 580 F.3d at 1329 ("[A] lump-sum damages award [based on a reasonable royalty] cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way

---

[1] It also is not subject to the same terminal disclaimer as the patents asserted throughout this litigation.

similar to the technology being litigated here.")). To properly be considered, Oyster must show that the licenses are "sufficiently comparable to the hypothetical license at issue in suit." *Lucent*, 580 F.3d at 1325. "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. Rather, to rely on any license to any technology other than a patent-in-suit, "a damages expert must opine on both the technological and economic comparability." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017).

Neither the ▮▮▮▮▮ is comparable, either technologically or economically. As a threshold matter, the ▮▮▮▮▮

▮▮▮▮▮

▮▮▮ (Ex. 5 - ▮▮▮ § 2.1), *i.e.*, exactly what is accused here. Despite this, Oyster's only basis for alleged technical comparability comes from Dr. Dallesasse, its infringement expert. Dr. Dallesasse found the '500 Patent to be technically comparable to the '327 Patent because they each relate to functionality found in optical fiber networks, but he conceded in his deposition that

▮▮▮▮▮

▮▮▮▮▮ (Ex. 6 - Dallesasse Dep. 110:5-112:11). Under this high level test of technical comparability, there are apparently 18,000 other "fiber optic" patents that fall within this "specific and specialized field." This is not sufficient. *See, e.g., Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (fact that infringing products in allegedly comparable license were also in computer security field and licensee was a competitor of defendant not sufficient proof of technological comparability); *Lucent*, 550 F.3d at 1328 ("Lucent's brief characterizes the four agreements as covering 'PC-related patents,' as if personal computer kinship imparts enough comparability to support the damages award.");

*ResQNet*, 594 F.3d at 870 (damages expert's reliance upon licenses that did not "even mention[] the patents in suit or show[] any discernible link to the claimed technology" was improper, especially when the expert "offer[ed] little or no evidence of a link between the [licenses] and the claimed invention").

The agreements are not economically comparable either. ██████████████████████████. (Ex. 5 at § 3.1). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* § 3.1(c), ███████████████████████████████████████████████████ and, based on conversations with WTAS, Oyster Inc.'s CFO expressly identified ████████████████████████████████████████████. The ███████████████ merely required ██████████████████████████████ and ████████████████████████████████████████████████████████████████████. (Ex. 7 – ██████████ § 3.1). Like the ██████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* ██████████████████████████████████████████████████████████████████. Moreover, ███████████████████████████████████████████████████████. Courts regularly exclude these kinds of settlements under Federal Rule of Evidence 403, and the Court should do so here, too. *See, e.g., Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794,

801 (E.D. Tex. 2007); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. CV 12-1013-RGA, 2015 WL 456154, at *2 (D. Del. Jan. 30, 2015).

The exchanges between WTAS (now Andersen Tax) and Oyster Inc. related to WTAS's efforts to determine the fair market value of Oyster Inc.'s patent portfolio as of January 1, 2010, further confirm that neither of these Agreements are relevant to any issue in this case. Specifically, despite WTAS requesting all relevant information from Oyster Inc. and stating that ▮▮▮▮ (Ex. 8 - ANDERSEN135), Mr. Foster (Oyster Inc.'s CFO) affirmatively chose not to even provide these agreements to WTAS for evaluation. (Ex. 9 - Loer Dep. 35:2-36:4; *id.* at 69:23-70:17).[2] Instead, ▮▮▮▮. (Ex. 8 - ANDERSEN136).

WTAS made clear that its valuation would be based on one of three well-accepted methodologies to patent valuation—the market approach, the income approach or the cost approach. (Ex. 9 - Loer Dep. and Ex. 4 thereto). These are the exact same three approaches that Oyster's damages expert, Mr. Dell, expressly acknowledged were appropriately considered by WTAS. But, per WTAS, ▮▮▮▮. (Ex. 9 - Loer Dep. and Ex. 2 thereto, at ANDERSEN030 ▮▮▮▮). Thus, while Oyster LLC's damages expert here criticizes WTAS's failure to use the ▮▮▮▮ as part

---

[2] Indeed, Mr. Foster stated in response that WTAS needed to "bear in mind per our call [that] ▮▮▮▮." (Ex. 8 - ANDERSEN135).

of a ███████████████████████████████ (Ex. 10 - Dell 2d Supp. Report at ¶ 7), it is clear that that decision was based primarily on Oyster Inc.'s CFO admonition that none of Oyster Inc.'s prior licenses (including the ████████████████████) were representative of the value of the portfolio.

These agreements suffer from every indicia to warrant exclusion: lack of technical comparability, lack of economic comparability, ████████████████████████████████, and dismissed by even Oyster as being ████████████████████. Cisco therefore moves in limine under FRE 402 and 403 that they be excluded and no reference made to them in this trial.

> **D.    Motion in Limine No. 9:  Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding its recent agreement with Coriant.**

Oyster entered a Settlement and License Agreement with Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. (collectively, "Coriant"), which was made effective as of June 27, 2018 (the "Coriant Agreement").  Courts often exclude settlements and licenses, particularly on the eve of trials, on the grounds that they are not probative of the outcome of a hypothetical negotiation of other third parties.  *See Fenner Investments, Ltd. v. Hewlett-Packard Co.*, Case No. 6:08-cv-273, 2010 WL 1727916, *2 (E.D. Tex. Apr. 28, 2010) ("District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have.").

In this case, no damages expert is attempting to rely on the Coriant Agreement in connection with any damages issue.  Indeed, during the deposition of Oyster's damages expert, Stephen Dell, on the "new defenses," he testified that he was of the opinion that the Coriant Agreement "was not a relevant indication of the value of a reasonable royalty that would be applicable – or against any of the defendants."  (Ex. 3 (Dell Tr. 07/11/18) at 64:14-17.)  He based this on his review of the Memorandum of Understanding between Oyster and Coriant, which

outlined the general terms of the Coriant Agreement. (*Id.*) Then, after he reviewed the final, executed Coriant Agreement, Mr. Dell confirmed that he was of ". . . that same opinion, that it is not a -- it is of limited relevance to the determination of a reasonable royalty, for many of the same reasons that the Fujitsu 1 and Fujitsu 2 agreement are not relevant indicators of value." (*Id.* at 64:19-23.) Thus, it was Mr. Dell's opinion that the Coriant Agreement did "not provide relevant data points" to the hypothetical negotiation. (65:16-21). Likewise, because Oyster's expert has opined that it is not relevant, Cisco's damages expert, Dr. Stephen Becker, has not provided an opinion on the Coriant Agreement.

Despite its own expert's opinion that the Coriant Agreement is not relevant to the hypothetical negotiation with Cisco, Oyster has informed Cisco that it might attempt to introduce the Coriant Agreement at trial. But the only possible relevance of the Coriant Agreement would be for damages purposes, and Oyster's expert has disavowed any such relevance. Thus, it is not relevant under Federal Rule of Evidence 402 and should be excluded on this ground.

Federal Rule of Evidence 403 provides another ground to prohibit the introduction of the Coriant Agreement. If Oyster's damages expert is not relying on the Coriant Agreement for damages, then the introduction of this settlement risks prejudice to Cisco on liability issues, as jurors could confuse the existence of third party settlements as evidence of liability or, at the very least, evidence that the patents must be "good," as opposed to the multitude of reasons that parties actually settle lawsuits as trial approaches. Moreover, if Oyster is permitted to introduce the Coriant Agreement, or to discuss its general parameters—*e.g.*, the amount paid—then Cisco would need to put those facts into the proper context. However, Oyster has not produced to Cisco the information that would permit it to do so. For example, Mr. Dell testified that he "should remember" what the accused revenue base at issue in his original report as to Coriant,

but could only say that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and that "some of the numbers are blurred together a little bit." (Ex. 3 at 66:15-23.) Mr. Dell also could not "recall specifically" through what date his base captured sales, simply saying "▮▮▮▮▮▮▮▮▮▮▮▮." (67:11-12)  In any event, Oyster has not produced to Cisco any of Mr. Dell's reports as to Coriant's alleged damages, and therefore, Cisco cannot test these "rough" estimations that Mr. Dell provided, including comparing Coriant's payment relative to its accused revenue base.  Nor can Cisco seek this type of information from Coriant, as the discovery period has long-since closed.

In short, because Oyster has acknowledged that the Coriant Agreement is not probative of any damages issues, it has no relevance to any issue in this case.  Even if Oyster attempts to articulate a basis to introduce this Agreement, its probative value is outweighed by its potential to prejudice Cisco on liability issues.  *Fenner*, 2010 WL 1727916, at *3 (granting motion in limine to exclude introduction of settlement agreements; "the potential for prejudice and jury confusion substantially outweigh whatever probative value the agreements may have").

## II.   CONCLUSION

Cisco respectfully asks the Court to grant its motions.

Respectfully submitted, this 2nd day of June, 2020.

                                        **COUNSEL FOR DEFENDANT**
                                        **CISCO SYSTEMS, INC.**

                                        */s/ Alice E. Snedeker*
                                        Eric Hugh Findlay
                                        Roger Brian Craft
                                        **Findlay Craft PC**
                                        102 N College Avenue
                                        Suite 900
                                        Tyler, TX 75702
                                        903/534-1100
                                        Fax: 903/534-1137
                                        Email: efindlay@findlaycraft.com

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Email: bcraft@findlaycraft.com

Louis Norwood Jameson
Matthew Christopher Gaudet
John R Gibson
Alice Snedeker
**Duane Morris LLP**
1075 Peachtree Street, NE
Suite 2000
Atlanta, GA 30309-3929
404/253-6915
Fax: 404/253-6901
Email: wjameson@duanemorris.com
Email: mcgaudet@duanemorris.com
Email: jrgibson@duanemorris.com
Email: aesnedeker@duanemorris.com

John Matthew Baird
**Duane Morris LLP**
505 9th Street, NW
Suite 1000
Washington, DC 20004-2166
202/776-7819
Fax: 202/776-7801
Email: jmbaird@duanemorris.com

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

Pursuant to the Court's Docket Scheduling Order (Dkt. 2), I hereby certify that on June 2, 2020, I electronically filed the foregoing document in Case No. 2:18-cv-479-JRG with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

*/s/ Alice E. Snedeker*
Alice E. Snedeker

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the Protective Order filed in the consolidated lead case Civil Action No. 2:16-cv-1302, Dkt. 95, and refiled in the above-captioned action as Dkt. 10.

*/s/ Alice E. Snedeker*
Alice E. Snedeker

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed. Counsel for Defendant Cisco communicated with Plaintiff's counsel regarding the issues presented in this Motion on June 1, 2020. Plaintiff's counsel indicated they are opposed to the relief sought herein.

*/s/ Alice E. Snedeker*
Alice E. Snedeker